IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JIMMY POLK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. CIV-11-677-D |
| | ) |
| PROFESSIONAL CLINICAL | ) |
| LABORATORIES, INC., | ) |
| | ) |
| Defendant. | ) |

**O R D E R**

Before the Court is Defendant Professional Clinical Laboratory, Inc.'s Motion for Summary Judgment [Doc. No. 27].[1] The Motion is fully briefed and at issue.[2] The Court rules as follows.

**Background**

Plaintiff Jimmy Polk, a citizen of Oklahoma, is a former employee of Defendant, which is a Texas corporation with its principal place of business in Texas. Plaintiff brought suit in state court in May, 2011, asserting that his employment was terminated in December, 2009, during a period of temporary total disability from an on-the-job back injury. Plaintiff alleged that the termination decision was motivated by retaliation for his filing a workers compensation claim, and by his disability. Based on these allegations, Plaintiff identified the following claims: (1) violation of Oklahoma's public policy and, specifically, a workers' compensation statute prohibiting retaliation, *see* Okla. Stat. tit. 85, § 5; (2) breach of an employment contract contained in written personnel

---

[1] Defendant states that Plaintiff's pleading, and thus the caption of the case, incorrectly identifies the corporation by use of the plural "Laboratories" instead of "Laboratory." Plaintiff apparently concedes his mistake, and has altered the caption on his brief.

[2] The Motion is supported by Defendant's opening, supplemental, and reply briefs [Doc. Nos. 27, 30 and 35], and opposed by Plaintiff's response brief [Doc. No. 34].

policies; (3) intentional infliction of emotional distress; and (4) violation of Oklahoma's anti-discrimination statute prohibiting termination of employment on the basis of disability, *see* Okla. Stat. tit. 25, § 1302.[3] Plaintiff sought compensatory and punitive damages, lost wages and benefits, and reinstatement or front pay.

Defendant timely removed the case to federal court on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a). Defendant now seeks summary judgment in its favor pursuant to Fed. R. Civ. P. 56 on the grounds that Plaintiff cannot establish his retaliation or discrimination claims, that no employment contract existed, and that he cannot prevail on a tort theory of intentional infliction of emotional distress. In his response brief, Plaintiff concedes that he cannot establish a breach of contract, and abandons that claim. He also disclaims the pursuit of any claim under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, because he did not file an administrative charge of discrimination.[4] Plaintiff contends, however, that administrative exhaustion is not a prerequisite to suit under a tort theory of wrongful discharge in violation of public policy under *Burk v. K-Mart Corp.*, 770 P.2d 24 (1989), premised on Oklahoma's anti-discrimination statute. Plaintiff also attempts to raise a new claim under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.* Plaintiff did not plead any FMLA claim in his original petition, nor has he requested

---

[3] Effective November 1, 2011, legislative amendments replaced "handicapped person" with the phrase used in federal statutes, "individual with a disability." *See* Okla. Stat. Ann. tit. 25, § 1301(4) (West 2012).

[4] Of course, he did not plead such a claim; the petition states no facts to establish administrative exhaustion, which is a jurisdictional prerequisite to suit under federal law. *See Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1183 (10th Cir. 2007).

leave to amend his pleading to state such a claim. Therefore, Plaintiff's arguments regarding FMLA leave are disregarded.[5]

**Standard of Decision**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id*. at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id*. If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322-23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* Fed. R. Civ. P. 56(c)(1)(A).

---

[5] In addition to objecting to Plaintiff's implied effort to amend his pleading, Defendant states in its reply brief that Plaintiff was not an "eligible employee" under the FMLA because it employed less than 50 employees within 75 miles of the worksite where Plaintiff was employed, *see* 29 U.S.C. § 2611(2)(B)(ii), and that any FMLA claim that Plaintiff might assert would fail for other reasons. Plaintiff does not dispute Defendant's position regarding the number of employees in its Oklahoma City operations. Thus, it appears that any request to amend would be futile, as well as untimely.

"The court need consider only the cited materials, but may consider other materials in the record." *See* Fed. R. Civ. P. 56(c)(3). The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## Statement of Undisputed Facts[6]

Plaintiff began his employment with Defendant in March, 2007, as a route phlebotomist in Oklahoma City. In that position, he traveled to nursing homes and collected specimens from residents.[7] Plaintiff injured his back on August 10, 2009, in what he claimed to be an on-the-job accident while lifting his medical supply box into his vehicle. At the time of his injury, Plaintiff had degenerative disk disease and a pre-existing back problem for which he was receiving medical treatment and taking prescription medications for pain management. Plaintiff filed a claim for workers' compensation benefits on September 10, 2009, which Defendant contested. Plaintiff never received temporary total disability (TTD) payments or benefits, and his claim was ultimately settled and dismissed without any judicial determination.

Plaintiff has not worked in any capacity since August 10, 2009, and he has testified that there was no specific date on which he could have returned to his employment as a route phlebotomist due to his ongoing treatment. The position required Plaintiff to lift a phlebotomy cart weighing approximately 40 pounds when fully loaded, travel to various facilities, pull the cart into each facility, collect specimens from numerous patients, and return with the specimens to the lab. After

---

[6] This statement includes facts presented by both parties that are supported by the record, but facts stated by the parties that are unsupported or immaterial to the issues addressed herein are disregarded. All facts are stated in the light most favorable to Plaintiff.

[7] At some point during his employment, Plaintiff was promoted to phlebotomist supervisor, but he voluntarily returned to the position of route phlebotomist before the relevant time period.

his injury, Plaintiff could not lift, push or pull more than 10 pounds. Plaintiff concedes that he could not have returned to work as a phlebotomist, but he contends he could have returned to a "light duty" position after September, 2009. Plaintiff inquired about light duty work but was informed that Defendant had no available position within that restriction. Plaintiff did not return to work, and Defendant recorded a termination date of December 1, 2009, when Plaintiff had exhausted his paid time off and his insurance coverage was terminated. Plaintiff has testified that he did not know of his termination until February, 2010, when he called to inquire about his employment status after his workers' compensation case had ended, although he learned on December 2, 2009, that his insurance had lapsed for nonpayment. Plaintiff did not file an administrative complaint with the Oklahoma Human Rights Commission or the EEOC.

Plaintiff has not worked at any employment since his termination by Defendant. He ceased looking for employment due to his disability, and has applied for social security disability benefits. Plaintiff became unable to work in about April of 2011.

## Discussion

### A.    Intentional Infliction of Emotional Distress

To prevail on a claim of intentional infliction of emotional distress under Oklahoma law, a plaintiff must show: "(1) the defendant acted intentionally or recklessly, (2) the defendant's conduct was extreme and outrageous, (3) the defendant's conduct caused the plaintiff emotional distress, and (4) the resulting emotional distress was severe." *See Computer Publications, Inc. v. Welton*, 49 P.3d 732, 735 (Okla. 2002). To satisfy the second element, the defendant's conduct must be so extreme and outrageous as to be "beyond all possible bounds of decency" in the setting in which it occurred, or "utterly intolerable in a civilized community." *See Eddy v. Brown*, 715 P.2d 74, 77 (Okla. 1986);

*see also Welton*, 49 P.3d at 735; *Kraszewski v. Baptist Medical Center of Okla., Inc.*, 916 P.2d 241, 248 (Okla. 1996). "In general, a plaintiff must prove that the recitation of defendant's conduct to an average member of the community would arouse the listener's resentment against the defendant and would lead the listener to exclaim 'Outrageous!'" *Welton*, 49 P.3d at 735.

In this case, Plaintiff has not come forward with any facts that suggest the level of extreme and outrageous conduct required to make out this tort claim. Plaintiff relies solely on the termination of his employment under difficult circumstances, while he was physically unable to perform his job with Defendant. The fact that Defendant refused to hold Plaintiff's job open in hope he might recover sufficiently to return to work – although unfortunate and allegedly unlawful, as discussed below – simply would not cause an expression of outrage by an average member of the community. On the record presented, the Court finds that Plaintiff has failed to identify sufficient facts, even if accepted and viewed most favorably to him, to permit a finding of extreme and outrageous conduct by Defendant.

Therefore, the Court finds that Defendant is entitled to summary judgment on Plaintiff's claim of intentional infliction of emotional distress.

**B.    Discriminatory Discharge Claim**

Plaintiff concedes that his failure to file an administrative charge of discrimination precludes a statutory claim under the Oklahoma Anti-Discrimination Act ("OADA"), Okla. Stat. tit. 25, § 1101 *et seq*. Plaintiff asserts, however, that his failure to pursue an administrative remedy does not affect a common law tort claim of wrongful discharge in violation of Oklahoma public policy, as embodied in the OADA, under *Burk v. K-Mart Corp.*, 770 P.2d 24 (Okla. 1989), and its progeny. Defendant disagrees, arguing that an administrative charge is a prerequisite to suit, even under *Burk*.

Defendant is correct that the OADA contains an express requirement that an employee must timely file an administrative charge of discrimination with the Oklahoma Human Rights Commission or the EEOC before filing suit on a claim of employment discrimination. *See* Okla. Stat. Ann. tit. 25 § 1350(B) (West 2012).[8] The OADA also requires that the administrative charge be filed within 180 days from the last date of discrimination. *Id.* Plaintiff's argument that a common law tort remedy is available under *Burk* without complying with the statutory procedure was expressly rejected by the Oklahoma Supreme Court in *Atkinson v. Halliburton Co.*, 905 P. 2d 772, 775-76 (Okla. 1995). The supreme court squarely held that the exhaustion of administrative remedies is a prerequisite to suit on a claim of disability discrimination, whether brought directly under the statute or as a common law tort under *Burk. See id.* at 777. This holding has led other courts to hold that administrative exhaustion is a "*jurisdictional* prerequisite for resort to the courts." *See Shackelford v. Oklahoma Dep't of Corrections,* 182 P. 3d 167, 168 (Okla. Civ. App. 2007) (emphasis in original).

Plaintiff argues that the holding of *Atkinson* has been abrogated by a subsequent decision of the Oklahoma Supreme Court.[9] The decision on which Plaintiff relies, *Smith v. Pioneer Masonry, Inc.,* 226 P. 3d 687 (Okla. 2009), does not address the OADA administrative prerequisites to the filing of a *Burk* claim. Plaintiff offers no other authority in support of his contention. Research reveals that federal district courts applying Oklahoma law have repeatedly ruled that exhaustion of administrative remedies is a prerequisite to the pursuit of a *Burk* claim based on the OADA. *See*, *e.g.*, *Curtis v. Eaglemed, LLC*, No. CIV-10-0605-HE, 2011 WL 220001, *2 (W.D. Okla. Jan. 21,

---

[8] Prior to legislative amendment in 2011, this requirement for a claim of handicap discrimination was set forth in Section 1901(A), now repealed.

[9] Plaintiff also cites a case that predates *Atkinson* and obviously could not have overruled it.

2011) (unpublished); *Barham v. K Mart Corporation,* No. 10-CV-0401-CVE-PJC, 2010 WL 3650684, *4 (N.D. Okla. Sept. 14, 2010) (unpublished); *see also Steffek v. Kingfisher Regional Hosp.*, Case No. CIV-10-17-R, Order (W.D. Okla. June 4, 2010) (unreported). This Court has reached the same conclusion. *See Escobeda v. Balon Corp.*, No. CIV-11-428, 2011 WL 5438916, *2 (W.D. Okla. Nov. 8, 2011) (unpublished). Because Plaintiff provides no persuasive legal basis to alter that conclusion, the Court adheres to it in this case.

Therefore, the Court finds that Defendant is entitled to summary judgment on Plaintiff's claim of discriminatory discharge on the basis of disability, due to Plaintiff's failure to exhaust his administrative remedies prior to filing this action.

**C.     Retaliatory Discharge Claim**

Plaintiff claims the protection of an Oklahoma workers' compensation statute, which (A) prohibits the termination of an employee for filing a workers compensation claim or instituting a proceeding and (B) prohibits termination during a period of temporary total disability (TTD) on the basis of absence from work. *See* Okla. Stat. tit. 85, § 5(A)-(B).[10] Initially in its Motion, Defendant challenged only Plaintiff's claim under (B), based on its reading of his pleading as asserting only this claim. Defendant contends a determination of TTD status or receipt of TTD payments is essential to this claim, but is absent in this case. In reply to argument in Plaintiff's brief regarding both types of claims, Defendant asserts that Plaintiff cannot establish a retaliatory discharge claim under (A) because he lacks evidence that he suffered an on-the-job injury as opposed to injury from a pre-existing medical condition.

---

[10] Legislative amendments in 2011 repealed these statutes but reenacted them in a new section 341. *See* Okla. Stat. tit. 5, §§ 5-7, 341 (West 2012).

The Oklahoma Supreme Court has adopted a burden-shifting approach to proof of a retaliatory discharge under § 5(A). *See Buckner v. General Motors Corp.*, 760 P.2d 803, 806-07 (Okla. 1988). To establish a *prima facie* case, Plaintiff "must show employment, on the job injury, receipt of treatment under circumstances which put the employer on notice that treatment had been rendered for a work-related injury, or that the employee in good faith instituted . . . proceedings under the Act, and *consequent* termination of employment." *Id*. at 806 (emphasis in original). "In order to establish a consequent termination under Oklahoma law, a plaintiff must produce evidence sufficient to support a legal inference that the termination was 'significantly motivated' by retaliation for exercising [his] statutory rights." *Blackwell v. Shelter Mut. Ins. Co*., 109 F.3d 1550, 1554 (10th Cir. 1997) (citing *Wallace v. Halliburton Co*., 850 P.2d 1056, 1058 (Okla. 1993), and *Taylor v. Cache Creek Nursing Ctrs.*, 891 P.2d 607, 610 (Okla. Civ. App. 1994); footnote omitted).

In this case, Defendant correctly notes that Plaintiff has offered no evidence to show he suffered an on-the-job injury within the meaning of the Workers' Compensation Act, that is, a bodily injury that "occurred 'in the course of' the employment" and "'arose out of' the employment." *See Pauls Valley Travel Ctr. v. Boucher*, 112 P.3d 1175, 1180 (Okla. 2005). In addition, the Court finds that Plaintiff has not pointed to sufficient facts that would connect his termination to his workers' compensation case and suggest a retaliatory motive. The Oklahoma Supreme Court has found an insufficient connection where the plaintiff relied solely on a temporal proximity of six weeks. *See Thompson v. Medley Material Handling, Inc*., 732 P.2d 461, 464 (Okla. 1987). In *Blackwell*, the Tenth Circuit found no inference of discrimination from the fact that the plaintiff had taken a leave of absence for an on-the-job back injury, returned to work, and then was terminated approximately one month after informing her supervisor that she was still having back problems. *See Blackwell,*

109 F.3d at 1555-56; *see also Igwe v. Saint Anthony's Hosp.*, 804 F. Supp. 2d 1183, 1195 (W.D. Okla. 2011), *aff'd*, 464 F. App'x 685 (10th Cir. 2012) ("while 'timing of a discharge may be evidence of a retaliatory discharge . . . it does not establish a prima facie case'") (quoting *Gussa v. J. Morris & Assocs., Inc.*, 12 P.3d 473, 474 (Okla. Civ. App. 2000)). Here, Plaintiff does not articulate any facts other than his filing a claim, providing reports to Defendant regarding his visits to a treating physician, and his termination approximately three months later. *See* Pl.'s Resp. Br. [Doc. No. 34] at 16-20. The Court finds that no reasonable inference arises from these facts that Defendant's decision to terminate Plaintiff's employment was motivated by retaliation for his filing or pursuing a workers' compensation claim. Therefore, for these reasons, the Court finds that Plaintiff has failed to demonstrate facts that would establish a *prima facie* case of retaliatory discharge under § 5(A).[11]

Regarding Plaintiff's claim to protection under § 5(B) during a TTD period, the Court agrees with Defendant that an essential element of this claim is proof that Plaintiff was receiving or entitled to receive TTD benefits under the Act. In reaching this conclusion, the Court is guided by decisions of the Tenth Circuit and the Oklahoma Court of Civil Appeals interpreting and attempting to harmonize apparently inconsistent provisions of the statute. Both relied on the Oklahoma Supreme Court's view of the statute as stated in *Upton v. State of Okla. ex rel. Dep't of Corrections*, 9 P.3d 84, 87 (Okla. 2000), *superseded by statute on other grounds*, *Glasco v. State of Okla. ex rel. Dep't of Corrections*, 188 P.3d 177, 183-84 (Okla. 2008), that the legislative intent behind Section 5(B) is to protect a claimant from discharge based on absenteeism while receiving TTD benefits because

---

[11] If Plaintiff could establish a *prima facie* case, the undisputed fact that Plaintiff was physically unable to perform the job duties of his position as a route phlebotomist would constitute a legitimate, non-retaliatory reason for his termination under *Buckner*, 760 P.2d at 806-07. Plaintiff has presented no facts to suggest that Defendant's stated reason for his termination – his inability to return to work – was pretextual.

TTD payments serve to compensate a claimant for a loss of wages during the healing period from an on-the job injury.  However, the statute also authorizes an employer to discharge "any employee who is determined to be physically unable to perform assigned duties" once "an employee's period of temporary total disability has ended."  *See* Okla. Stat. tit. 85, § 5(C) (now § 341(C)).  After examining the discussion of Section 5 in *Upton*, the Tenth Circuit concluded in *Cooper v. Central & Southwest Services*, 271 F.3d 1247, 1255 (10th Cir. 2001), "that the Oklahoma Supreme Court would hold that an employer may discharge an employee who is unable to perform his assigned duties under § 5.C, but only if that employee is not protected (receiving TTD compensation) by § 5.B."  An Oklahoma appellate court reached a similar conclusion in *Keddington v. City of Bartlesville*, 42 P.3d 293 (Okla. Civ. App. 2001), reasoning as follows:

> [I]f we construe § 5(B) as a limitation on the operation of § 5(C), the two provisions are given harmonious effect.  That is, § 5(A) prohibits "because of" discharges in retaliation for the actual or anticipated assertion of rights under the WCA, while § 5(B) plainly prohibits the termination of an employee while receiving WCA-authorized TTD due solely to absence from work. Section 5(C) just as plainly permits the termination of an employee either determined physically unable to perform assigned duties, or for reasons unrelated to the filing of a compensation claim. We consequently hold that while an employer may not terminate an employee receiving TTD pursuant to the WCA under § 5(B), once the employee's TTD healing period has ended, and the employee is determined to suffer some permanent physical disability which prevents the discharge of assigned duties for the employer, the employer bears no § 5 liability for then terminating the employee under § 5(C).

*Id.* at 297-98 (internal quotations, citations and footnotes omitted).

It is undisputed in this case that Plaintiff never received any TTD payments and no determination was ever made in Plaintiff's workers' compensation proceeding whether he qualified for TTD status.  Rather, Plaintiff relies on a note from his treating physician stating "if no light duty, TTD," to suggest that he should be protected under the Act.  This handwritten notation appears on

11

a "Back to work form" that was completed periodically while Plaintiff was receiving medical treatment for his August, 2009, injury. While it may provide evidence to support a workers' compensation claim,[12] it does not reflect a determination that Plaintiff was entitled to TTD benefits under the Act. "Whether an injured worker is entitled to temporary total disability compensation is a question of fact to be determined by the Workers' Compensation Court." *Gray v. Natkin Contracting,* 44 P.3d 547, 550 (Okla. 2001). In this case, the record shows no determination of this issue, except Plaintiff's answer to an interrogatory asking him to state the period of his TTD, which answer states: "Plaintiff was denied temporary total disability." *See* Def.'s Mot. Summ. J., Ex. 5 [Doc. No. 27-5] at 12. Accordingly, because no period of TTD status was determined and no TTD payments were made, the Court finds that Plaintiff has failed to come forward with facts to establish an essential element of a wrongful termination claim under § 5(B).

In short, the Court finds Plaintiff has failed to demonstrate a genuine dispute of material facts regarding his discharge claim under the Workers' Compensation Act, and that Defendant is entitled to summary judgment on this claim.

## Conclusion

For these reasons, the Court finds that Defendant is entitled to summary judgment on all claims asserted in Plaintiff's pleading.

---

[12] Defendant objects to this evidence as unauthenticated and inadmissible hearsay. The Court finds no need to resolve this objection because Plaintiff's proposed evidence is insufficient to create a genuine dispute of material facts.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment [Doc. No. 27] is GRANTED. Judgment shall be entered accordingly.

IT IS SO ORDERED this 16th day of July, 2012.

_____
TIMOTHY D. DEGIUSTI
UNITED STATES DISTRICT JUDGE